# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| M.D., individually and as the parent and natural guardian of J.E. and J.E., minors, | : | CIVIL DIVISION |
| | : | |
| | : | Case No. 2:26-cv-1430 |
| | : | |
| Plaintiffs, | : | **COMPLAINT** |
| | : | |
| v. | : | Filed on Behalf of Plaintiffs |
| | : | |
| MOON AREA SCHOOL DISTRICT, and PENNSYLVANIA INTERSCHOLASTIC ATHLETIC ASSOCIATION, | : | Counsel of Record for this Party: |
| | : | |
| | : | Thomas W. King III, Esquire |
| | : | PA. ID. No. 21580 |
| | : | tking@dmkcg.com |
| Defendants. | : | |
| | : | Thomas E. Breth, Esquire |
| | : | PA. ID. No. 66350 |
| | : | tbreth@dmkcg.com |
| | : | |
| | : | **DILLON, MCCANDLESS, KING,** |
| | : | **COULTER & GRAHAM L.L.P.** |
| | : | 128 West Cunningham Street |
| | : | Butler, PA 16001 |
| | : | Telephone: 724-283-2200 |
| | : | Facsimile: 724-283-2298 |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| M.D., individually and as the parent and natural guardian of J.E. and J.E., minors,<br><br>          Plaintiffs,<br><br>     v.<br><br>MOON AREA SCHOOL DISTRICT, and PENNSYLVANIA INTERSCHOLASTIC ATHLETIC ASSOCIATION,<br><br>          Defendants. | :<br>:<br>:   No.: 2:26-cv-1430<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## COMPLAINT

M.D., individually and as parent and natural guardian of J.E. and J.E., minors, by and through their legal counsel, Dillon McCandless King Coulter & Graham LLP, per Thomas E. Breth, Esquire and Thomas W. King, III, Esquire, file the within Complaint averring in support thereof as follows:

## PARTIES

1.     Plaintiffs, M.D., individually and as parent and natural guardian of J.E. and J.E., minors, are individuals residing in Allegheny County, Commonwealth of Pennsylvania (hereinafter referred to respectively as "Parent M.D." and "Students J.E.").

1

2.　　Parent M.D. and Students J.E. reside within the Moon Area School District which is located within the jurisdiction of this Court.

3.　　Students J.E. are enrolled as students in the Moon Area School District.

4.　　Students J.E. are minors who are eligible in all material respects to participate in the curricular, cocurricular, extracurricular, and interscholastic athletic activities generally available to the student enrolled in the Moon Area School District.

5.　　Defendant, Moon Area School District (hereinafter referred to as "Defendant Moon"), is a public school district organized and existing in accordance with the laws of the Commonwealth of Pennsylvania with its administrative offices located at 8353 University Boulevard, Moon Township, Allegheny County, Commonwealth of Pennsylvania.

6.　　Defendant Moon's Board of School Directors (hereinafter referred to as "Moon Board"), is the governing body of the Moon Area School District pursuant to the Pennsylvania Public School Code. 24 P.S. §3-301.

7.　　Defendant Moon is a state-actor within the Commonwealth of Pennsylvania pursuant to the powers and authority granted public school districts by the Pennsylvania Public School Code of 1949, 24 P.S. §1-101, *et seq., et al*.

8.　　As the governing body, the Moon Board has various statutory powers, duties, and authority, including, but not limited to, the obligation to promulgate

2

rules, regulations, and policies related to the management, supervision, and control over athletics and other school programs. 24 P.S. §5-511.

9.      Defendant Moon is a "member school" in the Pennsylvania Interscholastic Athletic Association.

10.      Defendant, Pennsylvania Interscholastic Athletic Association (hereinafter referred to as "Defendant PIAA") is a domestic non-profit corporation organized and existing in accordance with the laws of the Commonwealth of Pennsylvania with its corporate offices located at 550 Gettysburg Road, Mechanicsburg, Cumberland County, Commonwealth of Pennsylvania.

11.      Defendant PIAA is a state actor within the Commonwealth of Pennsylvania. *See*, *Campbell v. Pa. Interscholastic Ath. Ass'n (Office of Open Records),* 268 A.3d 502, (Pa. Commw. Ct. 2021), citing, *School Dist. v. Pennsylvania Interscholastic Athletic Association,* 309 A 2d. 353 (Pa. 1973); *also see*, *Commonwealth by Packel v. Pennsylvania Interscholastic Athletic Association*, 334 A.2d 839 (Pa. Cmmw. Ct. 1975).

12.      Defendant PIAA is governed by and operates in accordance with its Constitution and Bylaws. A true and correct copy of Defendant PIAA's 2025-2026 Constitution and Bylaws is attached hereto as Exhibit "A" incorporated by herein reference and made a part hereof as if fully set forth.

3

13.     Defendant PIAA's Constitution indicates that Defendant PIAA's Charitable Purposes are as follows:

A. To promote and support the educational values of interscholastic athletics and the high ideals of good sportsmanship.

B. To promote, establish and enforce uniform standards in interscholastic athletic competition among member schools.

C. To promote and support safe and healthy interscholastic athletic competition.

*PIAA, Const. at 1.*

14.     Defendant PIAA's Constitution and Bylaws are applicable to its member schools, including Defendant Moon.

15.     As a PIAA member school, Defendant Moon is required to comply with the PIAA Constitution and Bylaws.

16.     Defendant PIAA's Board of Directors has various powers and authority, including, but not limited to, the power and authority to have general control over all interscholastic athletic relations and Contests in which a PIAA member school participates, to elect its own officers, who shall be the officers of PIAA, and to establish its own rules of procedure, to interpret the provisions of the Constitution, Bylaws, Policies and Procedures, and Rules and Regulations of PIAA and such other Bylaws, policies, procedures, rules and regulation as it may, from time to time, adopt, and to exercise such other powers as are in keeping with the growth and needs of PIAA and which are consistent with the provisions of the

4

Constitution, Bylaws, Policies and Procedures, and Rules and Regulations of PIAA.

*PIAA, Const. at 4.*

## JURISDICTION AND VENUE

17. This Court has original jurisdiction pursuant to 28 U.S.C.A. §1331.

18. Plaintiffs reside within the jurisdiction of the United States District Court for the Western District of Pennsylvania.

19. Defendant Moon is a public school district located within the jurisdiction of the United States District Court for the Western District of Pennsylvania.

20. Defendant PIAA governs interscholastic athletic activities throughout the Commonwealth of Pennsylvania, including, but not limited to, interscholastic athletic activities within PIAA District No. 7, commonly referred to as the Western Pennsylvania Interscholastic Athletic League (hereinafter referred to as the "WPIAL") which is located within the jurisdiction of the United States District Court for the Western District of Pennsylvania.

21. This Court has subject matter jurisdiction pursuant to 28 U.S.C.A. §1343(a)(3)(4).

22. Venue is proper in the Western District pursuant to 28 U.S.C.A. §§1390(a), 1391(b)(2), as Defendants' conduct as set forth herein occurred within the Western District of Pennsylvania.

5

**MATERIAL FACTS**

23.     The preceding paragraphs are incorporated herein by reference and made a part hereof as if fully set forth herein.

24.     As a public school district within the Commonwealth of Pennsylvania, Defendant Moon exists, functions, and operates pursuant to the statutory powers, duties, and authority set forth in the Pennsylvania Public School Code of 1949, as amended. 24 P.S. §1-101, *et al., et seq.*

25.     Defendant Moon provides its students with a variety of generally available benefits, including, but not limited to, the opportunity to participate in curricular, cocurricular, extracurricular, and interscholastic athletic activities.

26.     These generally available activities are offered to all students enrolled in the Moon Area School District who satisfy the applicable eligibility criteria.

27.     At all times relevant to this Complaint, Students J.E. were enrolled in the Moon Area School District.

28.     At all times relevant to this Complaint, Students J.E. each satisfied the applicable eligibility criteria required to participate in the curricular, cocurricular, extracurricular, and interscholastic athletic activities generally available to the students enrolled in the Moon Area School District.

29.     As a Member School in the PIAA, Defendant Moon agreed to comply with Defendant PIAA's Constitution, Bylaws, Procedures, and Rules related to the

6

interscholastic athletic activities generally available to the students enrolled in the Moon Area School District.

30.   In the spring of 2026, Parent M.D. made the decision to relocate her family from her home in the Sto-Rox School District to a new home in the Moon Area School District.

31.   For years, Parent M.D. and her family have discussed their mutual desire to see Plaintiff M.D., and her sons move out of the Sto-Rox School District.

*32.*   For years, the Sto-Rox School District has been listed as one of the lowest performing school districts in the Commonwealth of Pennsylvania. *See, Pa Department of Education annual list of Low-Achieving Schools.*

33.   In July 2021, the Pennsylvania Department of Education declared the Sto-Rox School District to be in Financial Recovery Status as defined by section 621-A of the School Code and section 18.5 of Title 22 of the Pennsylvania Code, 24 P.S. § 6-621-A*;* 22 Pa. Code § 18.5.

34.   In September 2025, the Sto-Rox School District submitted its Amended Recovery Plan to the Department of Education pursuant to section 6-663-A of the School Code, 24 P.S. § 6-621-A. A true and correct copy of the Amended Financial Recovery Plan is attached hereto as Exhibit "B" and incorporated herein by reference as if fully set forth.

7

35.    The Amended Recovery Plan supports Parent M.D.'s concern regarding the academic achievement gaps between students who attend the Sto-Rox School District versus the Statewide averages, stating in relevant part as follows:

The district's proficiency levels in all assessed PSSA and Keystone topics were under half of the Statewide averages in each of the last five years. The gap between the District's performance and the Statewide averages on the 2023-2024 Keystone Exams is smaller for all subjects that it was in 2018-19, but proficiency levels themselves remain lower in 2023-24 relative to 2018-19.

*Exhibit B, p. 24.*

36.    The Borough of McKees Rocks, which is a large part of the Sto-Rox School District, has one of the highest crime rates of any city within the Commonwealth of Pennsylvania. *See, www.nextburb.com,* and *www.niche.com.*

37.    Stowe Township, which is the other part of the Sto-Rox School District, also has a high crime rate. *See, www.nextburb.com,* and *www.niche.com.*

38.    Plaintiff M.D.'s desire to move out of the Sto-Rox School District was motivated by her, and her family's desire to provide her sons with better educational opportunities in a safer community.

39.    Parent M.D. is a single mother with limited financial resources.

40.    Students J.E. are both outstanding students who have the grades and intelligence to participate in the advanced academic and co-curricular opportunities offered at the Moon Area School District.

41.    Plaintiffs' family is from the Moon area, so Plaintiffs are familiar and comfortable with the Moon community having spent time with family members in the Moon area.

42.    Upon enrolling in the Moon Area School District, Students J.E. were eligible to participate in the curricular, cocurricular, extracurricular activities, and interscholastic athletic activities generally available to the other students enrolled in the Moon Area School District.

43.    Students J.E. participated in the curricular classes offered to the students enrolled in the Moon Area School District.

44.    Students J.E. also began to participate in the interscholastic athletic activities offered to the students enrolled in the Moon Area School District.

45.    Shortly thereafter, Plaintiffs received two notices from Defendant Moon's Athletic Director, Alan Alcalde, one related to each of her sons, which stated in relevant part as follows:

> The Moon Area School District (MASD) Athletic Department (Grades 7-12) is governed by the Pennsylvania Interscholastic Athletic Association (PIAA). As a voluntary member of PIAA, MASD agrees to abide by all rules of that organization. ***MASD will very carefully check the circumstances of all new students enrolling in the district*** and will strictly adhere to the intent of the by-laws of the PIAA. Failure to do so could jeopardize the student's athletic eligibility as well as put at risk the team's chances of participating in PIAA playoffs and championship events.
>
> As a result of the detailed that must be covered when a student-athlete changes schools, all students transferring into MASD in grades 7-12 who have any

9

intention of participating in athletics before graduation must schedule an interview with the Athletic Director prior to gaining eligibility. Once the registration process has begun, all prospective new student-athletes and their parents should arrange for a meeting by calling: . . . [emphasis added.]

46.    In compliance with the directive from Athletic Director Alcalde, Plaintiff D.M. contacted Defendant Moon to schedule a meeting with Athletic Director Alcalde.

47.    At this mandatory meeting, Defendant Moon, via its Athletic Director questioned Parent M.D. regarding her decision to change her family's residence from the Sto-Rox School District to the Moon Area School District.

48.    Parent M.D. and her family explained to Athletic Director Alcalde that for years, Parent M.D. and her family had discussed their mutual desire to move out of the Sto-Rox School District to provide her sons with better educational opportunities in a safer community; that as a single mother, Parent M.D. had limited financial resources; that her sons are outstanding students who have the grades and intelligence to participate in advanced educational opportunities; and that since her family was from the Moon area, Plaintiffs are familiar and comfortable with the Moon community.

49.    In response, Athletic Director Alcalde informed Plaintiffs that he had conducted an investigation into Students J.E., and based upon his investigation, he concluded that there was "social media evidence" showing Students J.E.s' prior

10

affiliation with an athletic organization which had multiple Moon Area students participating on it; and that Students J.E. participated in one organization that included a current Moon Area coach.

50.     Based upon Athletic Director Alcalde's investigation, Athletic Director Alcalde concluded that there was reason to believe that Plaintiffs' move from Sto-Rox School District to the Moon Area School District may have been materially motivated by athletic purposes.

51.     As a result of their meeting with Athletic Director Alcalde, Plaintiffs were informed by Defendant Moon that Students J.E. were ineligible to participate in Defendants' interscholastic athletic activities pursuant to Defendant PIAA's Bylaws.

## A.     PIAA Bylaws.

52.     The Preamble of ARTICLE VI - <u>Transfer, Residence, and Recruiting</u> of the PIAA Bylaws states in relevant part as follows:

The purpose of this ARTICLE is to deter Transfers and/or recruiting which are materially motivated in some way by an athletic purpose.  . . . Further, such decisions are detrimental to efforts to maintain competitive integrity and equity, to prevent athletic recruiting, and ***to instill school loyalty***.

***PIAA recognizes the difficulty in preventing Transfers which are materially motivated in some way by an athletic purpose. Experience has shown that students can often disguise athletically motivated Transfers and, in almost every situation, show at least some legitimate purposes for such Transfers***.

In light of the above . . . PIAA has adopted an approach that is intended to strongly discourage and deter students from transferring for athletic purposes .

11

*. . The Board of Directors recognizes that this approach may, on occasion, result in a presumption of ineligibility for students for whom athletics may not have been a material factor in transferring and may conversely not catch all students for whom athletics was a material factor.* Consequently, the following ARTICLE includes provisions which permit, under appropriate circumstances, a District Committee to change eligibility status consistent with the objectives of this ARTICLE.

*Exhibit A, p. 17-18. [Emphasis added.]*

53.    Section 1 - General Provisions and Definitions of ARTICLE VI

Transfer, Residence, and Recruiting of the PIAA Bylaws states in relevant part as

follows:

A. Transfer: A Transfer occurs in any situation in which a student seeks eligibility to participate in interscholastic athletics at a school other than the one at which the student was either enrolled or otherwise eligible.

*Exhibit A, p. 18.*

54.    Section 2 - Presumptive Eligibility of ARTICLE VI Transfer,

Residence, and Recruiting of the PIAA Bylaws states in relevant part as follows:

Subject to Sections 3, 7, 8 of this ARTICLE, a transferring student is presumed to be eligible if the student meets one of the following provisions:

. . .

C. Change of Residence of Parent(s).

The student (1) has moved with and resides with the student's natural or, if legally adopted, the student's adoptive parents, or with either parent and (2) has transferred to a PIAA member school in the public school district in which the student now resides, or to a Private School. . . .

*Exhibit A, p. 18.*

12

55.    Section 3 - Review and Rescission of Presumptive Eligibility of ARTICLE VI - <u>Transfer, Residence, and Recruiting</u> of the PIAA Bylaws states in relevant part as follows:

> Notwithstanding Section 2 of this ARTICLE, a ***Regional Panel or District Committee***, within their respective jurisdictions, may, following a student's Transfer and upon request of the Principal of a PIAA member school, or on its own initiative, ***after giving notice to the student's school and an opportunity to be heard to the student and the student's school, make a determination to review, and potentially rescind, presumptive eligibility***.

*Exhibit A, p. 19. [Emphasis added.]*

56.    Prior to Athletic Director Alcalde's investigation, Students J.E. were permitted to participate without limitation in activities related to Defendant Moon's football program.

57.    At all times relevant to this Complaint, Students J.E. were and are eligible to participate in the PIAA governed athletic programs available at the Moon Area School District.

58.    Despite Students J.E.'s eligibility pursuant to the PIAA Bylaws, Defendant Moon declared Students J.E. ineligible to participate in the interscholastic athletic activities provided to the other students enrolled in the Moon Area School District.

59.    After Plaintiffs retained the undersigned legal counsel and at significant cost to Plaintiff M.D., Defendant Moon rescinded its unilateral decision to declare

13

Students J.E. ineligible to participate in the interscholastic athletic activities; however, Defendant Moon has indicated its intent to challenge Students J.E.s' eligibility pursuant to the PIAA Bylaws.

60.    To maintain her sons' continued eligibility, Defendant Moon required Parent M.D.to sign two "Pennsylvania Interscholastic Athletic Association, Inc. (PIAA) Member School Athletic Transfer Waiver Request Form[s]". True and correct copies of the form are attached hereto as Exhibit "C" and incorporated herein by reference as if fully set forth herein. (*Plaintiffs' names and other confidential information have been redacted from the forms.*)

61.    The basis to deny Students J.E.s' eligibility to participate in the interscholastic athletic activities is the fact that Plaintiffs changed their residency from the Sto-Rox School District to the Moon Area School District.

62.    Despite Defendant Moon's assertion that "MASD will very carefully check the circumstances of all new students enrolling in the district." as set forth in the notification sent to Plaintiffs, Defendant Moon does not investigation students who move into the Moon Area School District and participate in non-PIAA governed activities.

**B.    Students J.E. have a Fundamental Right to an Education under Pennsylvania Constitution.**

63.    Under the Education Clause of the Pennsylvania Constitution, Pa. Const. art III, § 14, Students J.E., and similarly enrolled students, have a fundamental

14

right to a free and full public education at the Moon Area School District free from discrimination. *William Penn Sch. Dist. v. Pa. Dep't of Educ.*, 294 A.3d 537, \*\*1054 (Pa. Commw. Ct. 2023).

64.     Students J.E.s' fundamental right to an education includes the fundamental right to participate in the curricular, cocurricular, extracurricular, and interscholastic athletic activities offered by Defendant Moon to the students enrolled in the Moon Area School District free from discrimination.

65.     Section 14 – Public school system of Article III of the Pennsylvania Constitution states, "[t]he General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth." Pa. Const. art III, § 14.

66.     "Between the plain language of the Constitution and the history of the Education Clause, the Court concludes the right to public education is a fundamental right explicitly and implicitly derived from the Pennsylvania Constitution." *William Penn Sch. Dist.* 294 A.3d at \*\*1054.

67.     "The Education Clause, at least implicitly, creates a correlative right in the beneficiaries of the system of public education – the students." *Id. at* \*\*1051.

68.     "An equal protection claim based on a fundamental right to education should be reviewed under strict scrutiny." *Id.* at \*\*1079.

15

**C.    Students J.E.s' Fundamental Right to an Education includes the right to participate in Interscholastic Athletic Activities generally available to the students enrolled in the Moon Area School District.**

69.    Paragraph (a) of Section 5-511 – <u>School Athletics, publications, and organizations</u> of the Pennsylvania Public School Code, 24 P.S. § 511, states in relevant part as follows:

> The board of school directors in every school district shall prescribe, adopt, and enforce such reasonable rules and regulations as it may deem proper, regarding (1) the management, supervision, control, or prohibition of exercises, ***athletics, or games of any kind***, school publications, debating, forensic, dramatic, musical, ***and other activities related to the school program***, including raising and disbursing funds for any or all of such purposes and for scholarships, and (2) the organization, management, supervision, control, financing, or prohibition of organizations, clubs, societies and groups of the members of any class or school, and may provide for the suspension, dismissal, or other reasonable penalty in the case of any appointee, professional or other employe, or pupil who violates any of such rules or regulations.

24 P.S. § 511(a). [emphasis added.]

70.    Pursuant to Section 5-511 of the Public School Code, Defendant Moon has adopted rules and regulations regarding the management, supervision, and control of athletics within the Moon Area School District.

71.    At all times relevant to this Complaint, Students J.E. have complied with Defendant Moon's rules and regulations related to athletics.

72.    Paragraph (b) of Section 5-511 – <u>School Athletics, publications, and organizations</u> of the Pennsylvania Public School Code, 24 P.S. § 511, states in relevant part as follows:

16

Any school or any class activity or organization thereof, with the approval of the board, may affiliate with any local, district, regional, State, or national organization whose purposes and activities are appropriate to and related to the school program.

24 P.S. § 511(b). [emphasis added.]

73.    Pursuant to Section 5-511 of the Public School Code, Defendant Moon has voluntarily decided to affiliate itself with Defendant PIAA as a member school in the PIAA.

74.    Paragraph (c) of Section 5-511 of the Public School Code states in relevant part as follows:

"The board of school directors may (1) permit the use of school property, real or personal, for the purpose of conducting any activity related to the school program, or by any school or class organization, club, society, or group, (2) authorize any school employe or employes to manage, supervise and control the development and conduct of any of such activities, (3) employ or assign any school employe to serve in any capacity in connection with any of such activities."

24 P.S. §5-511(c).

75.    Pursuant to Section 5-511 of the Public School Code, Defendant Moon has expended public funds for various expenses related to the interscholastic athletic activities and programs generally available to the students enrolled in the Moon Area School District, including, but not limited to, athletic facilities, coaches, equipment, uniforms, transportation, insurance, and other related expenses.

76.    Defendant Moon receives funding from both the federal government and the Commonwealth.

17

77.    Paragraph (f) of Section 5-511 of the Public School Code states as follows:

> "The board of school directors of any district is hereby authorized to appropriate any monies of the district for the payment of medical and hospital expenses incurred as a result of the participation in such athletic events or games, practice or preparation therefor, or in transportation to or from such athletic events or games, or the practice or preparation therefor, and for the purchase of accident insurance in connection with such participation and transportation."

24 P.S. §5-511(f).

78.    Section 4.27 – Physical education and athletics, *22 Pa. Code §4.27*, of the State Board of Education regulations states in relevant part as follows:

> In addition to physical education instruction under subsections (a)-(c), ***students of both sexes shall have equal access in interscholastic and intramural athletic programs*** to all of the following:
>
> (1) School facilities.
> (2) Coaching and instruction.
> (3) Scheduling of practice time and games.
> (4) Number of activities at each level of competition.
> (5) Equipment, supplies and services.
> (6) Funding appropriate to the sport.

22 Pa. Code §4.27(d). [emphasis added.]

79.    Pursuant to State Regulation 4.27, Defendant Moon makes available interscholastic and intramural athletic programs to both sexes as part of the educational programs generally available to the students enrolled in the Moon Area School District.

18

80.    Section 12.1 – <u>Free education and attendance</u>, 22 Pa. Code §12.1, of the

State Board of Education regulations states in relevant part as follows:

> All persons residing in this Commonwealth between the ages of 6 and 21 years ***are entitled to a free and full education*** in this Commonwealth's public schools.

22 Pa. Code §12.1(a). [emphasis added.]

81.    Like the other students enrolled in the Moon Area School District, Students J.E. are entitled to a free and full education from the Moon Area School District free from discrimination.

82.    In the case of *Ganaposki's Case,* 2 A.2d 742 (Pa. 1938), the Pennsylvania Supreme Court stated in relevant part as follows:

> ***Physical training includes organized sports and athletic exercises. Athletics are important to the moral, physical and mental development of students***. In *Galloway v. Prospect Pk. Boro. Sch. Dist.,* 331 Pa. 48, at p. 51, Mr. Justice STERN stated: "***Physical education is as much a part of the school curriculum as are subjects of intellectual study, and athletic supplies, therefore, are as 'necessary for school use' as maps, globes, and similar objects***. It is not the spirit of our public school system that only children with financial means to purchase their own supplies should have the opportunity of participating in school games and athletic sports." The School Code, in section 405, recognizes the inclusion of organized sports in the school program by entrusting to the board the management and control of exercises, athletics and games played by the pupils. [footnote omitted.]

*Ganaposki's Case*, 2 A.2d at *553. [emphasis added.]

83.    In the case of *Card v. Commonwealth, Pennsylvania School Employes' Retirement Bd.*, 478 A.2d 510, (Pa. Commw. Ct. 1984), the Commonwealth Court stated in relevant part as follows:

. . . the courts cite again and again the following broad description of "educational": The word taken in its full sense, is a broad, comprehensive term, and may be particularly directed to either mental, moral or physical faculties, but in its broadest and best sense it embraces them all, and *includes, not merely the instructions received at school, college, or university, but the whole course of training -- moral, intellectual and physical.*" Appeal of Gilden, 406 Pa. 484, 492, 178 A.2d 562, 566 (1962); Girard School District v. Pittenger, 481 Pa. 91, 99, 392 A.2d 261, 265 (1978); St. Sophia Religious Association of Ukrainian Catholics, Inc. v. Township of Cheltenham, 27 Pa. Commonwealth Ct. 237, 239, 365 A.2d 1389, 1390 (1976).

*Card,* 478 A.2d at **513. [emphasis added.]

84.    Students J.E.s' fundament right to an education, under article III, section 14 of the Pennsylvania Constitution, includes the right to participate in the curricular, cocurricular, extracurricular, and interscholastic athletic activities generally available to the students enrolled in the Moon Area School District free from discrimination.

**D.    Parent M.D. has a Fundamental Liberty Right to make decisions regarding the upbringing and education of her children.**

85.    In addition to Students J.E.s' fundamental right to an education, Parent M.D. has the fundamental right of association that safeguards her right to make decisions regarding the upbringing of her sons, including, but not limited to, how and where her sons are educated.

86.    "In our society, parents, not the State, have the primary authority and duty to raise, educate, and form the character of their children." *Mahanoy Area Sch. Dist. v. B.L.,* 594 U.S. 180, 202-203 (2021); *see, Wisconsin v. Yoder,* 406 U.S. 205,

20

232 (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition."); *Pierce v. Society of Sisters*, 268 U.S. 510, 534-535, (1925) (discussing "the liberty of parents and guardians to direct the upbringing and education of children under their control.").

87.    In the case of *Roberts v. United States Jaycees*, 468 U.S. 609 (1984), the United States Supreme Court stated that "[t]he Court has long recognized that, because the Bill of Rights is designed to secure individual liberty, it must afford the formation and preservation of certain kinds of highly personal relationships a substantial measure of sanctuary from unjustified interference by the State." *Roberts,* 468 U.S. at 619-620; citing, *E. g., Pierce* v. *Society of Sisters*, 268 U.S. 510, 534-535 (1925); *Meyer* v. *Nebraska*, 262 U.S. 390, 399 (1923).

88.    The *Roberts* Court further stated in relevant part as follows:

The personal affiliations that exemplify these considerations, and that therefore suggest some relevant limitations on the relationships that might be entitled to this sort of constitutional protection, are those that attend the creation and sustenance of a family -- marriage, *e. g., Zablocki v. Redhail*, 434 U.S. 374 (1978); childbirth, *e. g., Carey v. Population Servs. Int'l*, 431 U.S. 678 (1977); *the raising and education of children*, *e. g., Smith v. Org. of Foster Families for Equal. & Reform*, 431 U.S. 816 (1977); and cohabitation with one's relatives, *e. g., Moore v. E. Cleveland*, 431 U.S. 494 (1977). *Family relationships, by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life*. . . . As a general matter, only

21

relationships with these sorts of qualities are likely to reflect the considerations that have led to an understanding of freedom of association as an intrinsic element of personal liberty.

*Roberts,* 468 U.S. at 619-620.

89.     The Fourteenth Amendment to the United States Constitution states in relevant part as follows:

No State shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const., amend. XIV

90.     Section 1 of Article I of the Pennsylvania Constitution states as follows:

All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Pa. Const. art. I, § 1,

91.     As state actors, Defendants are prohibited from denying Plaintiffs their fundamental rights, as set forth herein, in violation of the United States and Pennsylvania Constitutions.

92.     Defendants cannot compel Plaintiffs to waive their constitutional rights in order to receive benefits generally available to the students enrolled in PIAA member school districts.

**E.    Parent M.D. has a Fundamental Liberty Right to decide where her family resides, including the right to change her family's residence.**

22

93.    In addition to their fundamental liberty right to make decisions regarding the upbringing and education of her sons, Parent M.D. has a fundamental right to decide where her family resides within the Commonwealth of Pennsylvania, including the right to change the family's residence free from restraint by the Commonwealth.

94.    Defendants do not have the authority to control where Plaintiffs reside; nor do Defendants have the authority to limit or restrict Plaintiffs' right to change residences within the Commonwealth.

95.    The Court of Appeals for the Third Circuit has concluded that the right to move freely about one's neighborhood or town, even by automobile, is implicit in the concept of ordered liberty and deeply rooted in the Nation's history. *McCool v. City of Phila.*, 494 F.Supp. 2d 307, *312-313 (E.D. Pa. 2007); citing, *Lutz v. City of Philadelphia*, 899 F.2d 255, *268 (3d Cir. 1990).

96.    Courts have construed the right to intrastate travel to encompass the right to change residences within a state. *McCool*, 494 F.Supp. 2d at  *312-313; citing, *Callaway v. Samson*, 193 F. Supp. 2d 783 (D.N.J. 2002) (applying Lutz to strike down as unconstitutional as applied a durational residency requirement for political candidates); *Bruno v. Civil Serv. Comm'n of City of Bridgeport*, 472 A.2d 328 (Conn. 1984) (holding that the right to intrastate travel is a fundamental right

protected by the United States Constitution and applying strict scrutiny to a durational residency requirement for public employment on this basis).

97.    Plaintiffs have a fundamental liberty right to move from the Sto-Rox School District to the Moon Area School District free from discrimination and retaliation from Defendants.

98.    Defendants cannot withhold from Plaintiffs generally available benefits offered to the students enrolled in the Moon Area School District because Parent M.D. has exercised her fundamental liberty rights to decide where her sons will reside and where her sons will be educated.

**F.    The Unconstitutional Condition Doctrine.**

99.    Defendants have conditioned Students J.E.s' participation in the generally available interscholastic athletic activities offered to the students enrolled in the Moon Area School District upon Parent M.D.'s waiver of her fundamental rights.

100.    Defendants have denied Students J.E. the right to participate in interscholastic athletic activities solely because Plaintiff M.D. exercised her fundamental right to move her family from the Sto-Rox School District to the Moon Area School District.

101.    "Pursuant to the unconstitutional conditions doctrine, the government may not deny a benefit to a person because that person exercised a constitutional

right." *Mallory v. Norfolk S. Ry. Co.*, 266 A.3d 542, 569 (Pa. 2021) (*reversed on other grounds, see Mallory v. Norfolk Southern Ry.,* 600 U.S. 122 (2023); citing, *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013) (explaining that the unconstitutional conditions doctrine prevents the government from coercing people into relinquishing constitutional rights); *see also Perry v. Sindermann*, 408 U.S. 593, 597, (1972) (holding that the state "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests").

102.  Defendant PIAA provides eligible students enrolled in its member schools with a variety of opportunities to participate in interscholastic athletic activities and contests.

103.  Defendant Moon provides eligible students enrolled in the Moon Area School District with a variety of opportunities to participate in interscholastic athletic activities and contests.

104.  Once offered by Defendants, Defendants cannot condition participation in those interscholastic athletic activities and contests upon the waiver of a constitutionally protected right.

105.  "[T]he state, having power to deny a privilege altogether, may grant it upon such conditions as it sees fit to impose. But the power of the state in that respect is not unlimited; and one of the limitations is that it may not impose conditions which

require the relinquishment of constitutional rights." *Mallory, supra* at 536-537; quoting *Frost v. R.R. Comm'n*, 271 U.S. 583, 593-94, (1926).

106. Defendants have denied Students J.E.s' right to participate in the generally available interscholastic athletic activities and contest which are part of Students J.E.s' fundamental right to an education because Parent M.D. has pursued her fundamental rights to make decisions regarding her sons, including, but not limited to, the decision to change their residency to improve the educational opportunities available to her sons and to raise her sons in a community of her choice.

107. Defendants have unconstitutionally conditioned eligibility to participate in the interscholastic athletic activities governed by Defendants upon Plaintiffs, and other similarly situated individuals, waiving their constitutional rights as set forth herein.

108. Further, Defendants have created a system of governance that violates the constitutionally protected right of Plaintiffs, and other similarly situated individuals, including, but not limited to, the denial of the students' fundamental right to an education in the Commonwealth of Pennsylvania.

109. Plaintiffs have suffered, and continue to suffer, an injury in fact, as a direct result of Defendants' discriminatory conduct as set forth herein.

26

110.   Plaintiffs have suffered, and continue to suffer, a violation of their constitutional rights which is *per se* irreparable harm.

111.   Plaintiffs are likely to prevail in their claims against Defendants as set forth herein.

112.   If Defendants are enjoined from violating Plaintiffs' constitutional rights as set forth herein the status quo will be restored in that Students J.E.s' eligibility to participate in the interscholastic athletic activities will be restored.

113.   Plaintiffs requested an Order enjoining and prohibiting Defendants from continuing to act in a discriminatory manner toward Plaintiffs and other similarly situated students.

**COUNT I**
**PLAINTIFFS v. DEFENDANTS**
**VIOLATION OF THE FOURTEENTH AMENDMENT**
**SUBSTANTIVE DUE PROCESS - 42 U.S.C. §1983**

114.   The preceding paragraphs of this Complaint are incorporated herein by reference and made a part hereof as if fully set forth herein.

115.   The Fourteenth Amendment to the United States Constitution states in relevant part as follows:

> No State shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const., amend. XIV.

116.   "Where fundamental rights or interests are involved, a state regulation limiting these fundamental rights can be justified only by a compelling state interest and legislative enactments must be narrowly drawn to express only the legitimate state interests at stake. *Alexander v. Whitman*, 114 F.3d 1392, 1403 (3d Cir. 1997), citing, *Roe v Wade*, 410 U.S. 113, 154 (1973).

117.   "Whether the property right asserted is entitled to substantive due process protection depends on whether it is considered 'fundamental.' Fundamental rights are rights that are 'deeply rooted in the Nation's history and traditions .... [and] interests implicit in the concept of ordered liberty like personal choice in matters of marriage and family.'" *Wrench Transportation Systems, Inc. v. Bradley*, 340 Fed.Appx. 812, 815 (2009), citing, *Nicholas v Pa. State University*, 227 F.3d 133, 143 (3d Cir.2000).

118.   As state actors, Defendants are prohibited from denying Plaintiffs their fundamental rights, as set forth herein, in violation of the 14th Amendment to the United States Constitution.

119.   Parent M.D., her sons, and their family have a constitutionally protected right to make decisions impacting their family, including, but not limited to, decisions regarding what is in the best interest of Students J.E. as determined by Parent M.D.

28

120. The decision where Plaintiffs reside is a decision that has a tremendous impact upon the educational opportunities available to Students J.E.

121. Where a family resides has a tremendous impact upon the health, safety, and welfare of the family members.

122. Families that reside in high crime neighborhoods are more likely to be the victims of crime.

123. Students who attend financially distressed schools have less educational opportunities available to them.

124. Where Plaintiffs reside also has a tremendous impact upon expended family members.

125. Plaintiff M.D.'s decision to move out of the Sto-Rox School District is so deeply rooted in our Nation's history and traditions that is warrants protection as a fundamental liberty right under the 14th Amendment.

126. In the exercise of this fundamental liberty right, Plaintiffs are entitled to the highest level of scrutiny in this Court's review of Defendants' actions.

127. Defendant PIAA's Bylaws indicate that "[t]he purpose of this ARTICLE [Article VI Transfers, Residence, and Recruiting] is to deter Transfers and/or recruiting which are materially motivated in some way by an athletic purpose." *PIAA, Preamble to Article VI of Bylaws at 17.*

128. The Preamble to Article VI further states in relevant part as follows:

PIAA and its member schools believe further that, despite increasing societal pressures to elevate the role of competitive athletics in society and in the educational process, *athletics should remain subservient to academics*. Students who make decisions as to what school to attend based upon factors relating to athletics defeat this objective. Further, *such decisions are detrimental to efforts to maintain competitive integrity and equity, to prevent athletic recruiting, and to instill school loyalty*.

*PIAA, Preamble to Article VI of Bylaws at 17-18.*

129. The compelling state interest asserted by Defendants is to prohibit parents, who make residency decisions for their children, from taking athletics into consideration in any material way.

130. Interscholastic athletic activities, whether governed by the PIAA or not, are an integral part of each student's fundamental right to an education within the Commonwealth of Pennsylvania.

131. Further, interscholastic athletic activities are a generally available benefit offered to students enrolled in the Moon Area School District.

132. When presented with a fundamental right, the appropriate standard of review to be applied by the court is strict scrutiny.

133. Under the strict scrutiny standard of review, the state's actions must be narrowly drawn to achieve the compelling state interest with no less intrusive means are available.

30

134. With respect to the alleged state interest of making sure athletics remain subservient to academic, Defendants already have significant attendance and academic requirements in place. *PIAA Bylaws, Exhibit A, pp. 13, 27-28.*

135. Student-athletes must satisfy these academic standards to be eligible to participate in PIAA governed interscholastic athletic activities.

136. If Defendants want to better assure that athletics remain subservient to academics, Defendants are free to implement more stringent academic requirements to be eligible to participate in PIAA governed interscholastic athletics.

137. With respect to the alleged state interest in preventing recruiting, Defendants already have extensive non-recruiting provisions in their Bylaws. *PIAA Bylaws, Exhibit A, Section 11, pp. 22-24.*

138. If Defendants want to better assure that recruiting is not occurring, Defendants are free to implement more stringent non-recruiting provisions, including harsher punishments such as lifetime bans for coaches, and increased training and enforcement efforts by Defendants.

139. Defendants have failed to implement more stringent academic requirements and harsher non-recruiting provisions.

140. Defendants have instead required Plaintiffs to waive their constitutional right in order for Students J.E. to be eligibility to participate in Defendants' interscholastic athletic activities.

31

141. Defendants' actions and the PIAA Bylaws as drafted violate the unconstitutional conditions doctrine and Plaintiffs' rights under the 14th Amendment.

142. As a general principle, the Supreme Court has recognized that the state cannot condition a benefit generally available to others in the state on the surrender of a constitutional right. *Sullivan v. A. W. Chesterton, Inc.*, 384 F. Supp. 3d 532, 541 (E.D. Pa. 2019); citing, *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604, 606 (2013) (holding that the court could not condition the grant of land use permits upon the applicant's funding of offsite mitigation projects on public land).

143. "[T]he logical foundation of the unconstitutional conditions doctrine applies with equal force in any case in which the enjoyment of a government-sponsored benefit is conditioned upon a person's nonassertion of any constitutional right." *Sullivan v. A. W. Chesterton, Inc.*, 384 F. Supp. 3d 532, 541 (E.D. Pa. 2019); *quoting*, *Wojtczak v. Cuyler*, 480 F. Supp. 1288, 1306 (E.D. Pa. 1979) (citing William W. Van Alstyne, *The Demise of the Right-Privilege Distinction in Constitutional Law*, 81 Harv. L. Rev. 1439, 1446 (1968)); *see also Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 156 (5th Cir. 1961) (providing that it "remains true that the State cannot condition the granting of even a privilege upon the renunciation of the constitutional right to procedural due process.").

144.    Defendants acknowledge that there transfer rules "may, on occasion, result in a presumption of ineligibility for students for whom athletics may not have been a material factor in transferring and may conversely not catch all students for whom athletics was a material factor." *Bylaws, Exhibit A, p. 17-18.*

145.    Plaintiffs' fundamental constitutional rights are being violated by Defendants on an ongoing basis.

146.    Defendants will not be harmed if injunctive relief is granted to Plaintiffs.

147.    Injunctive relief would restore the "status quo" under which Plaintiffs fully enjoyed the Free Exercise Rights protected by the First Amendment.

148.    Plaintiffs' prayer for relief is clear, and Plaintiffs are likely to prevail on the merits of their claims.

149.    Plaintiffs' prayer for relief is narrowly tailored to abate the improper conduct of Defendants and injunctive relief will not adversely impact the public interest.

150.    Plaintiffs have satisfied each of the elements necessary for injunctive relief and injunctive relief is appropriate in this matter to prevent further violations of Plaintiffs' Constitutional rights.

33

Wherefore, Plaintiffs respectfully request the relief set forth below for Defendants' violation of Plaintiffs right as protected by the 14th amendment of the United States Constitution.

**COUNT II**
**PLAINTIFFS v. DEFENDANTS**
**VIOLATION OF THE FOURTEENTH AMENDMENT**
**SUBSTANTIVE DUE PROCESS - 42 U.S.C. §1983**

151.    The preceding paragraphs of this Complaint are incorporated herein by reference and made a part hereof as if fully set forth herein.

152.    The Supreme Court has recognized that the right to interstate travel guarantees the right to change residences within the United States, reasoning that because the right to travel is fundamental, any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a compelling government interest, is unconstitutional. *McCool*, 494 F.Supp. 2d at *312-313; citing, *Shapiro v. Thompson*, 394 U.S. 618, 634 (1969) (striking down on equal protection grounds a minimum durational residency requirement imposed as a condition of eligibility for welfare benefits), overruled in part on other grounds by *Edelman v. Jordan*, 415 U.S. 651 (1974).

153.    The Court of Appeals for the Third Circuit concluded that the right to move freely about one's neighborhood or town, even by automobile, is implicit in the concept of ordered liberty and deeply rooted in the Nation's history. *McCool*, 494

34

F.Supp. 2d at *312-313; citing, *Lutz v. City of Philadelphia*, 899 F.2d 255, *268 (3d Cir. 1990).

154. Courts have construed the right to intrastate travel to encompass the right to change residences within a state. *McCool*, 494 F.Supp. 2d at *312-313; citing, *Callaway v. Samson*, 193 F. Supp. 2d 783 (D.N.J. 2002).

155. Plaintiff M.D., her sons, and their family have a constitutionally protected right to intrastate travel including the right to change the location of their residence.

156. Plaintiff M.D.'s decision regarding changing where her family resides is so deeply rooted in our Nation's history and traditions to warrant protection as a fundamental liberty and right protected by the 14th Amendment.

157. In the exercise of this Fundamental right, Plaintiffs are entitled to the highest level of scrutiny in this Court's review of Defendants' actions.

158. As set forth herein, Defendants have taken action to deny Students J.E. the same educational opportunities generally available to other students enrolled in the Moon Area School District solely because Plaintiffs have pursued their fundamental right to change their residence.

159. There is no compelling state interest sufficient to justify Defendants' actions towards Plaintiffs.

35

160.   Defendants have placed unconstitutional conditions upon Parent M.D. in order for Students J.E. to be eligibility to participate in interscholastic athletics.

161.   Defendants' actions and the PIAA Bylaws as drafted violate the unconstitutional conditions doctrine.

162.   Plaintiffs have satisfied each of the elements necessary for injunctive relief and injunctive relief is appropriate in this matter to prevent further violations of Plaintiffs' Constitutional rights.

Wherefore, Plaintiffs respectfully request the relief set forth below for Defendants' violation of Plaintiffs right as protected by the 14th amendment of the United States Constitution.

**COUNT III**
**PLAINTIFFS v. DEFENDANT MOON**
**VIOLATION OF THE FOURTEENTH AMENDMENT**
**EQUAL PROTECTION CLAUSE - 42 U.S.C. §1983**

163.   The preceding paragraphs of this Complaint are incorporated herein by reference and made a part hereof as if fully set forth herein.

164.   Under the Equal Protection clause, Section I of the Fourteenth Amendment, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S.C.A. Const. amend. XIV, § I; *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432 (1985).

165.   The purpose of the Equal Protection Clause of the Fourteenth Amendment is to secure that every person within a state's jurisdiction is protected

36

against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents. *See Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000).

166.   "The Equal Protection Clause announces a fundamental principle: the State must govern impartially and directs that all persons similarly circumstanced shall be treated alike. . . . when a state adopts a rule that has a special impact on less than all persons subject to its jurisdiction does a question arise as to whether the equal protection clause is violated." *See Alexander v. Whitman,* 114 F.3d 1392, 1403, (3d Cir.1997), *quoting*, *New York City Transit Authority v. Beazer,* 440 U.S. 568, 587, (1979); *quoting*, *Plyler v. Doe,* 457 U.S. 202, 216 (1982), *quoting*, *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415 (1920).

167.   Defendant Moon has implemented an educational system that restricts and denies educational opportunities to certain students enrolled within the Moon Area School District while providing other students with unrestricted access to the same educational opportunities, including interscholastic athletic opportunities.

168.   Under Defendant Moon's system of education, if a student transfers with athletic intent, the student is denied eligibility to participate in interscholastic athletic activities which are generally available to students who transfer without athletic intent.

37

169. As indicated above, Plaintiffs have a fundamental right to make educational decisions and Students J.E. have a fundamental right to an education under Pennsylvania's Constitution.

170. Parents who decide that interscholastic athletic activities are an important part of their child's overall education are denied generally available benefits; while parents who decide that interscholastic athletic activities are not an important part of their child's overall education are not denied the same generally available benefits.

171. Defendants have created a system of education under which Defendants will determine what level of importance interscholastic athletic activities may or may not play in the educational decision making process of parents.

172. Defendant Moon has implemented an education system that treats individuals in a disparate manner based upon the educational decisions those individuals make regarding the education of their children.

173. Parents who make educational decisions consistent with Defendant Moon's priorities are rewarded and parents who make educational decisions perceived to be inconsistent with Defendant Moon's priorities are punished.

174. Defendant Moon punished Plaintiffs for making certain educational decisions while at the same time, Defendant Moon does not punish similarly situated students who make the similar educational decisions.

38

175. In the exercise of their fundamental rights, Plaintiffs are entitled to the highest level of scrutiny in this Court's review of Defendant Moon's actions.

176. As set forth herein, Defendant Moon has taken action to deny Students J.E. the same educational opportunities generally available to other students enrolled in the Moon Area School District solely because Plaintiffs have pursued their fundamental rights.

177. There is no compelling state interest sufficient to justify Defendant Moon's actions towards Plaintiffs.

178. Defendant Moon has placed unconstitutional conditions upon Parent M.D., which require Parent M.D. to waive her constitutional right to made education decisions regarding the education of her sons, in exchange for Students J.E. eligibility to participate in interscholastic athletic activities.

179. Defendants' actions and the PIAA Bylaws as drafted violate the unconstitutional conditions doctrine.

180. Plaintiffs have satisfied each of the elements necessary for injunctive relief and injunctive relief is appropriate in this matter to prevent further violations of Plaintiffs' Constitutional rights.

Wherefore, Plaintiffs respectfully request the relief set forth below for Defendants' violation of Plaintiffs right as protected by the 14th amendment of the United States Constitution.

39

**COUNT IV**
**PLAINTIFFS v. DEFENDANTS**
**VIOLATION EQUAL PROTECTION CLAUSE**
**STATE LAW CLAIM**

181. The preceding paragraphs of this Complaint are incorporated herein by reference and made a part hereof as if fully set forth herein.

182. Section 1 of the Fourteenth Amendment to the United States Constitution states in relevant part as follows:

> No State shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const., amend. XIV, §1.

183. Section 1 of Article I of the Pennsylvania Constitution states as follows:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Pa. Const., art. I, §1.

184. An Equal Protection claim under Article 1, Section 1 of the Pennsylvania Constitution is analyzed under the same standard as Section 1 of the Fourteenth Amendment. *See Love v. Stroudsburg*, 597 A.2d 1137, 1139 (Pa. 1991).

185. Students J.E. have a fundamental right to an education under the Pennsylvania Constitution. *William Penn Sch. Dist. v. Pa. Dep't of Educ.*, 294 A.3d 537, **1054, (Pa. Commw. Ct. 2023).

40

186. "An equal protection claim based on a fundamental right to education should be reviewed under strict scrutiny." *Id.* at **1079.

187. Defendants have implemented a system that treats similarly situated students enrolled in the Moon Area School District in a disparate manner.

188. Students J.E. are enrolled in the Moon Area School District and they satisfy the applicable eligibility criteria to participate in the interscholastic athletic activities that Defendants offer the other students enrolled in the Moon Area School District.

189. Students J.E. are similarly situated with the other students who are enrolled in the Moon Area School District because they satisfy the applicable eligibility criteria to participate in the interscholastic athletic activities.

190. Despite being similarly situated with the other students, Defendants' have implemented a system that denies Students J.E. the generally available right to participate in the interscholastic athletic activities sponsored by Defendants.

191. Defendants alleged compelling state interest is to eliminate athletics as a material consideration by parents who are making educational decisions regarding the upbringing of their children.

192. In the exercise of their fundamental rights, Plaintiffs are entitled to the highest level of scrutiny in this Court's review of Defendants' actions.

193. As indicated above, Defendants' actions cannot survive the strict scrutiny standard of review.

194. Defendants' actions are not narrowly tailored to achieve the compelling state interest because there are numerous less intrusive means available to further Defendants' stated compelling interest.

195. Further, Defendants have implemented a system which denies fundamental rights based upon the parents' evaluation and determination regarding what is in the best interest of their children.

196. Parents who decide that interscholastic athletic activities are an important part of their child's education are denied generally available benefits; while parents who decide that interscholastic athletic activities are an important part of their child's education are not denied generally available benefits.

197. Defendants have created a system of education under which Defendants will determine what level of importance interscholastic athletic activities may or may not play in the educational decision making process of parents.

198. Parents who make educational decisions consistent with Defendants' priorities are rewarded and parents who make educational decisions perceived to be inconsistent with Defendants' priorities are punished.

199.    There is no compelling state interest sufficient to justify Defendants' actions towards Plaintiffs or the disparate treatment of similarly situated students as set forth above.

Wherefore, Plaintiffs respectfully request the relief set forth below for Defendants' violation of Plaintiffs right as protected by the 14th amendment of the United States Constitution.

**COUNT V**
**PLAINTIFFS v. DEFENDANTS**
**VIOLATION SUBSTANTIVE DUE PROCESS**
**STATE LAW CLAIM**

200.    The preceding paragraphs of this Complaint are incorporated herein by reference and made a part hereof as if fully set forth herein.

201.    The substantive due process standard in Pennsylvania is consistent with the substantive due process standard utilized under the United States Constitution.

202.    The constitutional analysis applied to the laws that impede upon these inalienable rights is a means-end review, legally referred to as a substantive due process analysis. *Nixon v. Dep't of Pub. Welfare*, 839 A.2d 277, 286 (Pa. 2003); citing, *Adler v. Montefiore Hosp. Ass'n of Western Pennsylvania*, 311 A.2d 634, 640-41 (Pa. 1873).

203.    Where laws infringe upon certain rights considered fundamental, . . ., courts apply a strict scrutiny test." *Nixon*, 576 Pa. at 287; citing, *Stenger v. Lehigh Valley Hosp. Center*, 609 A.2d 796, 799-802 (Pa. 1992).

204.    As indicated above, there is no compelling state interest sufficient to justify Defendants' actions towards Plaintiffs and Defendants' action cannot survive strict scrutiny.

Wherefore, Plaintiffs respectfully request the relief set forth below for Defendants' violation of Plaintiffs right as protected by the 14th amendment of the United States Constitution.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Honorable Court enter an Order granting Plaintiffs relief as follows:

1. An Order finding Defendants' conduct to be in violation of Plaintiffs' rights as guaranteed by the Fourteenth Amendment to the United States Constitution as set forth above.

2. An Order finding Defendants' conduct to be in violation of Students J.E.s' fundamental right to an education as guaranteed by the Pennsylvania Constitution.

3. An Order finding Defendants' conduct to be in violation of the Equal Protection Clause and the Substantive Due Process Clause of the Pennsylvania Constitution.

4. An Order enjoining Defendants' violation of Plaintiffs' constitutional rights as set forth above.

5. An Order requiring Defendants to grant Students J.E., and other similarly situated students, eligibility to participate in Defendants' interscholastic athletic activities and programs as generally available to the other students enrolled in the Moon Area School District.

6. An Order awarding counsel fees and costs to Plaintiffs and requiring Defendants to reimburse the same.

44

7.  An Order granting any other relief deemed appropriate by the Court.

Respectfully submitted,

**DILLON McCANDLESS KING
COULTER & GRAHAM LLP**

By: */s/ Thomas E. Breth*
Thomas E. Breth, Esquire
PA I.D. No. 66350
tbreth@dmkcg.com
Thomas W. King, III, Esquire
PA I.D. No. 21580
tking@dmkcg.com

*Counsel for Plaintiffs*

*Special Counsel to the Thomas
More Society*

45

## VERIFICATION

I, ███████████, hereby verify that the facts set forth in the foregoing

**COMPLAINT** are true and correct to the best of my knowledge, information, and

belief. I understand that the statements herein are made subject to the penalties of 18

Pa. C.S. § 4904 relating to unsworn falsification to authorities.

6·30·2026
_____
Date

_____
M.D., natural parent and guardian of
J.E. and J.E., minors